## SUTTON v. CLARK.

1  CHARGE.—When stating issues raised by the pleadings, Judge need not state other issues raised in the case; and if he err in stating the issues made by pleadings, and such error is to be made a ground of appeal, his attention must be called to it.

2  IBID.—ADVERSE POSSESSION.—No error to charge jury that "possession is nine points in the law," if the remark be followed by a legal definition of the presumptions arising from possession.

3.  IBID.—LIMITATION OF ACTIONS—REMAINDERMEN.—That statute will not run against remaindermen until death of life tenant was practically covered by part of charge excepted to in its connection.

4.  ADVERSE POSSESSION—GENERAL DENIAL.—TITLE by adverse possession may be affirmatively asserted by defendant under the general denial of plaintiff's title.

5.  LIMITATION OF ACTIONS—LIFE TENANT—REMAINDERMEN.—When the statute of limitations begins to run against one in his lifetime, his death and devise of land to one for life, with remainder over, will not arrest it in favor of remainderman, unless there be a *new trespass* during holding of life tenant.

6.  DOES THE CODE, sec. 109, apply to case of adverse possession which had begun before its adoption?

7.  ADVERSE POSSESSION—PRESUMPTION—GENERAL DENIAL—TITLE—GRANT.—Defendant, under general denial, may show that he solely or in connection with others has been in possession of land long enough to presume a grant. *Code, 109, construed.*

8.  IBID.—IBID.—TITLE—GRANT—TACKING.—In making up adverse possession, long enough to presume a grant, defendant may tack his possession to those through whom he claims.

Before BENET, J., Chesterfield, November, 1899. Affirmed.

Action for possession of land by Jas. F. Sutton against E. C. Clark, J. M. Clark, W. A. Clark, G. N. Clark, Eleanor Knight and Mary Knight. From verdict and judgment for defendant, plaintiffs appeal.

*Messrs. W. P. Pollock* and *Edward McIver,* for appellants, cite: *Objection that action was not commenced within statutory period must be taken by answer:* 9 S. C., 94; 16 S. C., 386; 3 S. E. R., 63. *Defendant must show that plaintiff was not in possession:* 14 S. C., 189. *Defendants cannot tack their possession to make out statutory period:* 48 S. C., 45; 29 S. C., 392; 28 S. C., 489; 16 S. C., 132; 14 S. C., 180, 596. *Statutes do not run against remainderman during lifetime of life tenant:* 4 Rich., 619; 2 S. E. R., 8; 20 S. C., 52; 48 S. C., 53; 18 S. C., 526; 17 S. C., 53; 25 S. C., 524.

*Messrs. Stevenson & Matheson,* contra, cite: *Evidence objected to on one ground below cannot be objected to on another on appeal:* 53 S. C., 69; 52 S. C., 376. *Questions made and not passed on will not be considered:* 49 S. C., 21; 53 S. C., 80. *Points not made before Circuit Judge cannot be considered:* 51 S. C., 76, 526; 48 S. C., 429; 44 S. C., 22, 169, 299; 43 S. C., 305, 477, 539, 380, 384, 403, 34, 79; 14 S. C., 179; 57 S. C., 78. *Judge's attention should have been called to errors in stating issues:* 57 S. C., 332, 467; 58 S. C., 227; 2 S. C., 238; 23 S. C., 188; 38 S. C., 33. *Twenty year presumption need not be pleaded:* 14 S. C., 101; 7 Wend., 94; 8 Pick., 187; 1 N. & McC., 296. *Death of first owner would not stop statute then running:* 23 S. C., 128; 20 S. C., 52.

March 11, 1901. The opinion of the Court was delivered by

MR. JUSTICE GARY. This action was commenced on the first day of March, 1899, for the recovery of certain real property hereinafter mentioned. As some of the questions

raised by the exceptions require reference to the pleadings
to determine what issues were involved, it is deemed neces-
sary to set out a copy of the complaint and answer. The
complaint was as follows: "The plaintiff above named by
his complaint shows: I. That he is the owner in fee simple
and entitled to the possession of all that certain piece, parcel
or tract of land, situate, lying and being in the county of
Chesterfield, State of South Carolina, containing 577 acres,
more or less, bounded on the north by lands belonging to the
estate of Neill Crawford, on the east by said estate, and by
Big Black Creek, on the south by lands of said estate and
of J. M. Clark, and on the west by lands of E. C. Clark,
reference being had to grant from the State of South Caro-
lina to J. J. Schroter, bearing date December 23d, 1827, and
plat thereto attached, bearing date July 20th, 1827, descrip-
tion thereof will more fully appear. II. That Neill Craw-
ford, late of the county and State aforesaid, was for a num-
ber of years in the unlawful possession of a part of said tract
of land, and the said Crawford recently departed this life
intestate, as plaintiff is informed and believes, leaving as his
heirs at law and distributees his nephews, the defendants,
E. C. Clark, J. M. Clark, G. N. Clark, and W. A. Clark, and
his nieces, the defendants, Eleanor Knight and Mary
Knight, and Angus Douglass and D. L. Douglass, E. C.
Douglass and Ella Douglass, the husband and children re-
spectively of his niece, Nancy Douglass, who had departed
this life intestate, leaving no other heirs at law—the said
Ella Douglass being an infant over the age of fourteen years.
III. That at the death of the said Neill Crawford, the de-
fendant, E. C. Clark, as heir at law of said Crawford, for
himself and the other defendants above named, set up a
claim to said lands and took possession of a part of same
under said claim, which said claim is pretensive and has no
force at law, but said claim is a cloud on plaintiff's title.
IV. That the plaintiff is entitled to the possession of all of
said lands, but the defendants as above stated unlawfully
withhold the possession of a part thereof from him."

The answer was as follows: "For a first defense: 1. That they deny on information and belief the allegations of paragraphs one and four of said complaint, and so much of paragraph two of the same as allege that Neill Crawford was in unlawful possession of the land described in the complaint, and that Angus Douglass has any interest in the same, or claims any interest therein as heir at law of Neill Crawford or otherwise, and they deny so much of paragraph three as alleges that the claim of such of the defendants as do claim an interest in the same, is pretensive and of no force in law. For a second defense: I. That neither the plaintiff nor any of his grantors or ancestors or predecessors has been in possession of the land in dispute here or in any part thereof within ten years last past before the commencement of this action, and these defendants, their ancestors, predecessors and grantors (except the defendant, Angus Douglass,) have been in open, notorious and avowed adverse possession of the same (part being held by said defendants together as heirs at law of Neill Crawford and part being held by J. M. Clark individually) for more than ten years past before the commencement of this action."

The record contains the following statement: "The complaint was dismissed as to Angus Douglass, D. L. Douglass, E. C. Douglass and Ella Douglass, they neither having or claiming any interest in the lands. The case came on for trial at the November term of the Court of Common Pleas (1899) for Chesterfield County before his Honor, Judge Benet, and a jury, and the plaintiff offered testimony tending to show that the land described in the complaint, 557 acres, was granted to J. J. Schroter, December 23d, 1827, the grant and plat thereto attached being introduced in evidence. Plaintiff also introduced testimony tending to show that at the death of the said Schroter, which occurred in the year 1846, he left a will by which he devised the said land to his daughter, Mrs. Ann Sutton, for her lifetime, and at her death to his grand-daughter, Rosalie Sutton, the daughter of the said Mrs. Ann Sutton, and that this was the only land

devised to her.    That the said Mrs. Ann Sutton died in the
year 1893, and that thereafter the said Rosalie Sutton, in the
year 1899, by deed conveyed the said land to the plaintiff
herein, which said deed was introduced in evidence.    The
said Rosalie Sutton is still living.    The defendants offered
in'evidence a grant to William White for 150 acres, dated
February 4th, 1793, another grant to William White for
660 acres, dated May 6th, 1799, and a third grant to Wil-
liam White for 584 acres, dated January 4th, 1803.    Testi-
mony was then introduced tending to show that the above
lands were sold by William White to William Reeder, and
that thereafter the said lands were sold at a sheriff's sale, in
the year 1827, as the lands of the said Reeder, and bid off
by J. J. Schroter, who held possession until 1835, and then
assigned his bid and directed this deed to be made to Edward
Burch, to whom a deed was made by A. M. Lowry, sheriff,
dated 11th September, 1835; and that said Burch deeded
same to Neill Crawford, January 30th, 1837.    They also
introduced a plat made by D. Feagan, surveyor, dated
March 27th, 1827, the surveyor's certificate thereon stating
that it was made for J. J. Schroter, and was a plat of the
Reeder lands under the William White grants hereinbefore
set out.    The field notes of the surveyor corresponding with
the plat were also introduced in evidence. . The said plat
contained 2,400 acres, whereas on its face it purported to
contain 1,460 acres.    It was located by order of the Court
in this action, and it was shown that it covered the three
William White grants, and the land in dispute.    The de-
fendants also introduced evidence tending to show that in
1832, the said J. J. Schroter was sold out by the sheriff and
placed in jail for debt, and introduced a deed from John
Evans, as sheriff, to Hugh Crawford under said sale for the
lands described as the Reeder or White lands; also a deed
from Hugh Crawford to Neill Crawford for said lands.
Testimony was also introduced tending to show that Neill
Crawford was in possession of said lands from the date of
his deed, in 1837, up to the time of his death, in 1897, and

that the defendants have been in possession thereof since said time. The plaintiff offered testimony tending to show that the land in dispute, to wit: the tract covered by the grant to Schroter, dated December, 1827, while included in the plat made by Feagan, was not covered by the White grants hereinbefore set out, but that the land in dispute was adjacent thereto and bounded on the east thereby. The plaintiff also offered testimony tending to show that after the death of the said Schroter, which occurred in 1846, all the other devisees under his will received and took possession of and still hold considerable tracts of land thereunder, but said tracts were not part of the grants which covered the lands in dispute. The plaintiff also offered testimony tending to show that those under whom the defendants claim did not hold possession of any part of the land in dispute until about 1861, and that the defendants had not held possession thereof for ten years next preceding the commencement of this action * * * No question was made on the trial at any stage or presented to the Judge in any way that the issues passed upon and referred to in exceptions 4, 5, 7 and 9, were not raised in the pleadings."

The jury rendered a verdict in favor of the defendants. The plaintiff appealed upon exceptions, the first of which is as follows: "I. Because the Circuit Judge erred in charging the jury as follows: 'Because, if such be the case, that neither the plaintiff nor any of those through whom he claims (his grantors, predecessors or ancestors) have been in possession at all in the last ten years, then the right of action would be barred, if the defendants have been in possession or any of them;' whereas, he should have added the proviso, that 'unless such plaintiff or the person through whom he claims was under some disability, such as infancy, lunacy, or, as in this case, having or claiming an estate in remainder after the death of another person during the lifetime of the life tenant." His Honor, the presiding Judge, used the language mentioned in this exception when stating to the jury what issues were raised by the

pleadings. The words which it is submitted should have been added as a proviso are nowhere to be found in the pleadings; and furthermore, if the presiding Judge failed to state any of the issues, it was incumbent on the party to the action desiring to make this a ground of appeal to have called his attention to the omission. This exception is overruled.

The second exception is as follows: "II. Because the Circuit Judge erred in charging the jury as follows: 'Now you have heard the old saying, that "possession is nine points in the law," and it is well that it is so'—in that he gave undue weight to the fact of possession, and intimated his opinion in the case." The Circuit Judge immediately followed up this remark by the following explanation: "The law presumes that those in possession are rightfully in possession, and he who claims that they are unlawfully in possession, has to satisfy the jury by the preponderance of the evidence that he has a good title, and a better title than the defendant. He is to recover by the strength of his own title." As thus explained, there was no prejudicial error, and the exception is overruled.

The third exception is as follows: "III. Because the Circuit Judge erred in charging the jury as follows: 'Therefore, if those who have an interest in the land, a claim of any kind in the land, sit silently by and let others set up their claims, and take possession and keep possession, for ten years, as to such people the law would turn a deaf ear and will not hear them. They have lost the right of action; they came into Court too late.' Whereas, he should have charged that neither the statute of limitations nor adverse possession will run against a remainderman until the termination of the life estate. Immediately preceding this remark, the Circuit Judge explained the law as follows: "You heard the expression in argument about a statute 'running,' that the statute will not 'run' or will 'run.' That is a technical term, very plain to the members of the bar, but not plain to intelligent jurors; but when the expres-

sion is used that the statutes will run against some parties, it means that the time of the commencement, after ten years referred to; that the operations of the statute is having its effect; and if the statute runs for ten years, then the barrier is complete and the defense is established. It will not, of course, run against those who are unable to stop it, because people can stop the running of a statute. Those who have a claim for the land can assert their claim during the ten years, and if they can do so they will stop the running of the statute against them. Some cannot in law stop it. An infant, one under age, cannot. A lunatic could hardly do so. And so, also, a party as you have heard spoken of as remaindermen of a life estate may not be able to do so until the death of the life tenant. The statute, therefore, does not run against every person. It runs only against those who could, if they would, stop it. It could not run against those who legally have not the power to stop it, which shows that the law will take care of those only who cannot take care of themselves." When the language stated in the exception is considered in connection with the charge just mentioned, it practically gave to the appellant the benefit of the principle for which he contends, and the exception is overruled.

The fourth exception is as follows: "IV. Because the Circuit Judge erred in charging the jury as follows: 'If the said Neill Crawford took possession of the land in dispute under claim of title, and held and claimed it as his own adversely before the death of John J. Schroter, and continued to so hold it until ten years expired from his first taking posession, the action would be barred by the statute of limitations,' when there was no such issue raised by the pleadings and before the Court." In the case of *Busby* v. *Ry. Co.,* 45 S. C., 312, Mr. Chief Justice McIver, delivering the opinion of the Court on the question, "Whether adverse possession of real estate for the statutory period confers a positive, affirmative title, or simply operates as a bar to the claim of any person seeking to dispossess the person in possession," says: "It is not to be denied that at

one time it seemed to be supposed that adverse possession operated simply as a bar to an action to recover possession of the land. Accordingly, we find in the books the expression that the statute of limitations may be used as a shield of defense, not as a weapon of offense. But, on the other hand, we find in our own cases which will be hereinafter referred to, dicta, at least, which plainly recognize the doctrine that adverse possession of real estate for the requisite period does confer positive title, which may be asserted affirmatively." He quotes with approval the following language of Mr. Justice Miller, in *Campbell* v. *Holt*, 115 U. S., at pages 622, 623, 6 Sup. Ct., 209: "By the long and undisturbed possession of tangible property, real or personal, one may acquire a title to it or ownership superior in law to that of another who may be able to prove an antecedent, and at one time paramount, title * * * Mr. Angell, in his work on Limitations of Actions, says that the word 'limitation' is used in reference to the time which is prescribed by the authority of the law during which a title may be acquired to property by virtue of a simple adverse possession and enjoyment, or the time at the end of which no action at law or suit in equity can be maintained. 'Prescription, therefore,' he says, 'is of two kinds; that is, it is either an instrument for the acquisition of property or an instrument of an exemption only from the servitude of judicial process.' * * * The English and American statutes of limitations have in many cases the same effect, and, if there is any conflict of decisions on the subject, the weight of authority is in favor of the proposition, that where one has had the peaceable, undisturbed, open, possession of real or personal property, with an assertion of his ownership, for the period which under the law would bar an action for its recovery by the real owner, the former has acquired a good title—a title superior to that of the latter, whose neglect to avail himself of his legal rights has not lost him his title. This doctrine has been repeatedly asserted in this Court (citing the cases). It is the doctrine of the English Courts, and has been often as-

serted in the highest Courts of the States of the Union."
Other cases are also cited to sustain this view, to which may
be added: *Duren* v. *Kee,* 50 S. C., 444, and *Cave* v. *Ander-
son,* 50 S. C., 293. By reference to the pleadings it will be
seen that the plaintiff alleged he was the owner in fee of the
land in dispute, and this allegation was denied in the answer
of the defendants. Under this issue the plaintiff was bound
to recover, if at all, upon the strength of his own title and
not upon the weakness of that of his adversary. The de-
fendants had the right to defeat the plaintiff's recovery by
pleading and proving the facts necessary to sustain the bar
of the statute. They also had the right to show that the
title was not in the plaintiff, but in themselves, or even in a
person who was not a party to the action. *Faysoux* v.
*Prather,* 1 N. & McC., 296. If the defendants had a title
to the land by adverse possession, it made no difference
when it was acquired. They had the right under the issue
made by the pleadings to offer it in evidence, not as a bar to
the plaintiff's recovery, but to disprove the allegation of the
complaint that the plaintiff held the title in fee, which the
defendants denied. In a note on page 285, 13th vol. Enc.
of Pl. and Pr., we find the following: "In *Hill* v. *Bailey,* 8
Mo. App., 85, the Court, in holding that a general denial of
the plaintiff's title will admit evidence of adverse posses-
sion, said: 'The plaintiffs insist that the finding and judg-
ment were erroneous, because the answer did not set up the
statute in defense. When the statute is relied on as a bar
to the remedy merely, it must be specially pleaded. The
rule is ancient, and needs no citation of authorities to sustain
it. But where the title to real estate is in question, the ope-
ration of the statute is found to have a higher range. It is
capable of conferring an absolute title. Hence it has long
been held that a general denial of the plaintiff's title will suf-
fice for the admission of evidence of adverse possession for
the statutory period; because this will not merely bar the
remedy but may establish a title in the defendant, which will
exclusively negative any ownership in the plaintiff. In

29—59

other words, it sustains and verifies the denial of the plaintiff's title. *Nelson* v. *Brodhack*, 44 Mo., 596. The rule is not confined to actions of ejectment. The reasoning upon which it is founded sanctions its application to any case, wherein the title to land is in dispute. There was, therefore, no error in admitting this defense under the general denial." While, technically speaking, the request which his Honor charged was not responsive to the issue made by the pleadings as to the bar of the statute, we fail to see wherein it was prejudicial to the plaintiff, as the facts therein mentioned were sufficient to confer title upon the defendants. This exception is overruled.

The fifth exception is as follows: "V. Because the Circuit Judge erred in charging the jury as follows: 'If the statute began to run in the lifetime of John J. Schroter, no life estate intervening would stop its currency, and if the defendants or those under whom they claim held adversely for ten years, which holding began during the lifetime of John J. Schroter, plaintiff's action would be barred,' when there was no such issue raised by the pleadings before the Court." In disposing of this request, the presiding Judge said: "I so charge you. There, again, the main point for you to decide is, if they held possession, did that possession take place or begin during the lifetime of John J. Schroter. A different law would apply, if it began after; but if it began during his lifetime and was kept up continually for ten years—part of the ten years being during his life and part after his death—then no life estate intervening would stop the running of the statute." The exception does not allege error in the propositions of law which were charged, but simply that there was no such issue raised by the pleadings. The defendants, as we have shown, had the right to prove title in themselves by adverse possession, and the charge was relevant to this issue. This exception is overruled.

The sixth exception is as follows: "VI. Because the Circuit Judge erred in charging the jury as follows: 'If it began to run during his lifetime and was kept up continuously, for

ten years—part of the ten years during his life and part after his death—then no life estate intervening would stop the running of the statute." No specific error is pointed out in this exception; but waiving this objection, it cannot be sustained. When the statute has commenced to run, no subsequent disability will arrest it. *Satcher* v. *Grice,* 53 S. C., 126; *Subrich* v. *Adams,* 20 S. C., 52. When rights are conferred upon others after the statute has commenced to run and there is a *new* trespass while they are laboring under disability, they will not be barred of their right to bring an action based on the *new* trespass until their disability is removed. *Garrett* v. *Weinberg,* 48 S. C., 28. But there was no testimony in this case tending to prove a *new* trespass after the death of John J. Schroter, and within ten years after the statute began to run, if it began in his lifetime.

The seventh exception is as follows: "VII. Because the Circuit Judge erred in charging the jury as follows: 'That if Neill Crawford held the land in dispute adversely and as his own for ten years before the death of John J. Schroter, any title that Schroter might have had was barred, and no title could have passed under any will he might have made relative thereto,' when there was no such issue raised by the pleadings before the Court." The exception is disposed of by what has already been said, and is overruled.

The eighth exception is as follows: "VIII. Because the Circuit Judge erred in charging the jury as follows: 'If John J. Schroter's right of action to recover the land from Crawford in his own lifetime was barred by the statute of limitations, then he had no right to leave the land or devise the lands in his will; and if he did so, then his devisee could not set up any higher claim than Schroter himself.'" No specific error is alleged in this exception. The words therein contained were used by the presiding Judge in charging the request in the seventh exception. Immediately preceding the words in the eighth exception are: "That is the law. In other words." This exception is also disposed of by what

has been said in considering the other exceptions, and is overruled.

The ninth exception is as follows: "IX. Because the Circuit Judge erred in charging the jury as follows: 'The defendants ask the Court to charge that the possession of a tract of land under a claim of title by virtue of a written instrument, sole or connected, for forty years before the commencement of the action, shall be deemed and is valid against the world.' The Code holds that after forty years no action is allowed, after forty years possession. That is another statute of repose. So that, unless the evidence shows you that the plaintiff or his ancestor or grantor was actually in possession of this property, or a part of it, within forty years from the commencement of the action, then his action would be barred,' when there was no such issue by the pleadings and before the Court; and in throwing the burden of proof on the plaintiff to show that he or those under whom he claimed had been in possession within forty years; when, if the issue had been properly raised, the burden was on the defendants to show that the plaintiff and those under whom he claimed had not been in possession within forty years." In so far as the question relates to the burden of proof, we see no reason for reversing the Circuit Judge. His charge did not have reference to this question, and, furthermore, is to be considered in connection with other portions of the charge, in which he stated what was to be proved by the respective parties.

We next come to the consideration of the other question, to wit: whether there was error in said charge by reason of the fact that there was no issue to which it was responsive raised by the pleadings. Sec. 109 of the Code is as follows: "Sec. 109. No action shall be commenced in any case for the recovery of real property, or for any interest therein, against a person in possession under claim of title by virtue of a written instrument, unless the person claiming, his ancestor or grantor, was actually in the possession of the same or a part thereof within forty years

from the commencement of such action. And the posses-
sion of a defendant, sole or connected, pursuant to the pro-
visions of this section, shall be deemed valid against the
world after the lapse of said period." Sec. 94 of the Code
provides that "the objection that the action was not com-
menced within the time limited can only be taken by
answer." It will be observed, that the exception touching
this question does not allege that there was error of law in
the request or the language of the presiding Judge charging
it, nor that there was error by reason of the fact that the
provisions of the Code were inapplicable to the case. It had
not been forty years since the Code was adopted, when this
action was commenced, and its provisions did not extend to
cases where the right of action had already accrued. Code,
sec. 93. In fact, sec. 109 of the Code does not seem to have
been enacted until several years after its adoption, as it does
not appear in the Rev. Stat. of 1873.

The request to charge, in itself, contains a general state-
ment of the law applicable to the presumption of a grant,
and would have been sound, even if the word "twenty" had
been substituted for "forty." It was, therefore, not
prejudicial to the plaintiff's rights, and he cannot
complain in that respect. The presumption of a
grant gives title to the land. *Ellen* v. *Ellen,* 16 S. C., 132.
It can be established without being specially pleaded, for the
reasons hereinbefore stated. The request was, therefore,
responsive to the issue made by the pleadings, and this would
be sufficient to show that the exception cannot be sustained.

We will, however, consider the effect of the presiding
Judge's words in charging the request; and this involves a
construction of sec. 109 of the Code. This section may be
divided into two parts. The first relates to the *commence-
ment of the action,* and shows under what circumstances the
plaintiff will be barred of his right to recover the land. The
second has reference to the rights of the *defendant,* and
practically confers upon him a title in fee after he has held
possession of the land under the circumstances and for the

length of time therein mentioned. A possession which "shall be deemed valid against the world," is tantamount to the fee; otherwise the last sentence in said section would be meaningless. The length of time necessary to bar the plaintiff's right of recovery, and to confer title upon the defendant, is the same in each case. In order to defeat the plaintiff's right of recovery, the defendant would be compelled to prove every fact that would have to be established, to show that he had become the owner of the title by virtue of that section of the Code. It is true, the objection that the action was not commenced within the time limited, should be taken by answer, but as the facts necessary to sustain such defense would be sufficient to confer title on the defendants, which could be proved under a general denial, we fail to see wherein the charge was prejudicial to the plaintiff. This exception is overruled.

The tenth exception is as follows: "X. Because the Circuit Judge erred in charging the jury, in substance, that the defendants could tack the time during which they had held possession with the time during which those under whom they claim held possession, so as to complete the statutory terms of adverse possession." This is allowed under sec. 109 of the Code; also, in establishing the presumption of a grant. *Ellen* v. *Ellen, supra,* and cases therein cited. This exception is overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.