6651

YOUNG v. McNEILL.

1. STATUTE OF USES—WILLS—TRUSTEES.—Under the devise, "I hereby give to my brother, John DuRant, and my friend, Eleaser Waterman, all the estate I die possessed of, with the following limitation, that is to say, in trust to the intent that William W. DuRant do be permitted to take, use and enjoy all the profits and income of my estate real and personal without let or hindrance from the period of my decease during his natural life, it being my express will and intention that no part or parcel of the said estate shall in any wise be subject to the debts or contracts of the said William W. DuRant that do now or may hereafter exist, and it is further my will that after the decease of the said William W. DuRant, then and in that case, the estate aforesaid shall descend to the son of said William W. DuRant, should any such be then living and called Henry, and in default of such male child, then to such other child or children of the said William W. as may then be living," the use was not executed either in the life tenant or in the contingent remaindermen.
Requisites to give the statute of uses effect stated.
*Faber* v. *Police*, 10 S. C., 376, *criticised*.

2. LIMITATION OF ACTIONS—PRESUMPTIONS—ADVERSE POSSESSION.—Legal title in trustee and rights thereunder of *certui que trustents* may be defeated by statute of limitations, adverse possession and presumption of title.

3. SEC 109, OF CODE OF PROCEDURE, barring action for possession of land after forty years does not apply to cases in which the cause of action had accrued when it was enacted, or before it has been in force for forty years.

4. PRESUMPTIONS.—After the lapse of twenty years the presumption is that a grantee and those claiming under him have complied with the conditions in a grant.

5. REAL PROPERTY—TITLE—EVIDENCE.—In an action for possession of land, a defendant may introduce a deed in another party with which he can show no connection, as it tends to defeat plaintiff's title.

6. EVIDENCE—HARMLESS ERROR.—Admission of incompetent evidence is harmless error where other evidence on the same point has been let in without objection.

7. ATTORNEYS—JURY.—After the Court has decided there is no issue of fact for the jury, the attorneys of either party have no right to address the jury.

8. REHEARING refused.

Before GARY, J., Horry, fall term, 1905.    Reversed.

Action by Virginia D. Young *et al.* against Donald T. McNeill.    From judgment for plaintiff, defendant appeals.

*Messrs. Robt. B. Scarborough,* and *Johnson & Quattlebaum* for appellants.    Mr. Scarborough cites: *Admission of ancient documents:* McGuire v. Blount, U. S., Rep., Act. Tenn., 1905; 3 Wig on Ev., sec. 2145.    *Right to be heard by counsel:* 55 G., 466; Con., art. I, sec. 25; 7 Amd. U. S. Con.    *Defendant may show paramount outstanding title without connecting himself with it:* 5 Rich. L., 541; 19 S. C., 406; Sed. & Wait on Trial of Title to Land, sec. 57, 477; 59 S. C., 440; 73 S. C., 108; 71 S. C., 322; 160 U. S., 371; 161 U. S., 274.    *As to presumption of performance of conditions:* 2 Nr. McC., 400.    *The use and the title met in William W. DuRant:* 27 Ency., 118; 2 McC., 52; 2 Black, 332, 335, secs. 169, 171; 10 S. C., 376; 1 Dud., 119; 54 S. C., 426.    *Statute of limitations run against trustees and their certui que trustent:* 4 Rich., 101, 50; 40 S. C., 168; 50 S. C., 120.    *Long possession presumes a grant against trustees:* 11 Rich., 424; 63 S. C., 154; 40 S. C., 168; 50 S. C., 235; 1 Hill Ch., 69; 17 S. C., 45; 50 S. C., 120; 54 S. C., 399; 59 S. C., 448; 45 S. C., 312; 115 U. S., 622; 50 S. C., 444, 293; 19 L. R. A., 839.

*Messrs. Montgomery & Lide, W. F. Clayton, S. W. G. Shipp, M. C. Woods,* and *George Galletly,* contra, cite: *When Judge may direct a verdict:* 71 S. C., 426; 66 S. C., 300; 52 S. C., 516; 2 Strob., 563.    *Construction of the will:* Fearne Con. Rem., 8; 2 Wash. Real Prop., 240; Dud. Eq., 118; 16 S. C., 156; 10 S. C., 376; 2 McC., 252; 1 Hill, 413; 1 Chitty's Black., No. 336; 18 S. C., 184; 7 Rich., 74; 31 S. C., 13; 20 Ency., 589; 32 Gratt., 315; 2 Wash. Real Prop., 638-9; 36 Md., 129; Fearne Con. Rem., 344. *Statute of limitations do not begin to run until life estate falls in:* 59 S. C., 507; 54 S. C., 395; 22 S. C., 323.    *The Beaty deed is not a deed of foeffment with livery of seizin:* 24 Ency., 412;

Fearne Con. Rem., 321; Chitty's Black. Nos. 310, 311; 10 S. C., 376; 2 Wash. Real Prop., 253; 4 Kent. Com., 255; Cheves Eq., 33; 3 Am. Dec., 61. *When both parties claim from a common source neither can show title in another than common source:* 5 Rich., 541, 525; 71 S. C., 322; 71 S. C., 518; 109 U. S., 608; 10 Ency., 493; 81 N. C., 116; 6 Wall, 715.

This case was first argued at November term, 1906, but rehearing was granted on petition therefor, and it was re-argued at the April term, 1907. The opinion was filed 10 July, but remittitur held up on petition for rehearing until

September 11, 1907. The opinion of the Court was deliv-livered by

MR. JUSTICE GARY, A. J. This action was commenced on the 8th of July, 1901, to recover the possession of a small tract of land.

The complaint alleges: 1st. "That Henry DuRant, late of the County of Horry, in the State of South Carolina, departed this life on or about the 6th day of June, in the year 1837, leaving of force his last will and testament, which was duly admitted to probate, and is recorded in the office of the judge of probate for the County of Horry, a copy of which will is attached and made a part of this complaint.

2nd. "That under the terms of said will, his son, William W. DuRant, took a life estate in the rents and profits of his estate, real and personal, with remainder in fee to a son of William W. DuRant, who shall survive him and be called Henry, but in default of such male child, then to the child or children of William W. DuRant living at the death of the life tenant.

3rd. "That the life tenant departed this life on or about the 15th day of December, 1896, leaving no son surviving him called Henry, but leaving as remaindermen under the will of Henry DuRant his children, as follows: Laura E., who first intermarried with one Covington, and afterwards

10—78

with W. H. Wade; Virginia D., who intermarried with W. J. Young; Gertrude, who intermarried with W. H. Lide; Louisa, who intermarried with J. T. Brown; Florence D., who intermarried with Junius H. Evans; Fleetwood, who intermarried with C. B. Whilden; Pauline and Claudia.

. 4th. "That since the death of the life tenant, to wit, during the month of November, 1898, Laura E. Wade has departed this life, leaving as her only heirs at law her children, Harrison W. Covington, and Jesse W., who intermarried with James Liles.

5th. "That among the numerous tracts of land devised under the will of Henry DuRant, and which falls to these plaintiffs, as remaindermen under said will, is a certain tract of land, situate in Horry District (now county), on the north side of Waccamaw River, adjoining the village of Conwayboro (now Conway), more particularly described in a plat and grant to John DuRant, of date July 6th, 1818, and by John DuRant conveyed to Henry DuRant, January 17th, 1821; also some town lots in the village of Conwayboro.

6th. "That the said William W. DuRant did, some time in the month of November, 1838, convey to one James Beaty the aforementioned tract of land, with the exception of twenty-nine acres, and that the said James Beaty did at various times and to divers persons, convey portions of said tract of land.

7th. "That the defendant is in possession of and claims all that certain lot or tract of land, in the County of Horry and State of South Carolina, containing three and one-third acres—the same being a part of the lands granted to John DuRant, and by him conveyed to Henry DuRant, and by William W. DuRant conveyed to James Beaty, as above mentioned, and through James Beaty to defendant. That the plaintiffs herein, as remaindermen under the will of Henry DuRant, are the owners of and entitled to the immediate possession of the above described tract of land, with the rents and profits from the death of William W. DuRant,

and although demand has been made upon the defendant for the possession of the said tract and four hundred dollars rents and profits, he wrongfully withheld the same and refused to give possession, or to pay said rents and profits."

The defendant denied generally the allegations of the complaint, and set up the defenses of the statute of limitations, adverse possession, possession long enough to presume a grant, and section 109 of the Code as a perpetual bar.

The jury under the direction of his Honor, the presiding Judge, rendered a verdict in favor of the plaintiffs, and the defendant appealed.

The first question that will be considered is, whether the legal title was executed under the statute of uses, in those holding the beneficial interests. The provision of the will out of which this question arises is as follows:

"I hereby give to my brother, John DuRant, and my friend, Eleaser Waterman, all the estate I die possessed of, with the following exceptions and limitation, that is to say, in trust to the intent that William W. DuRant do be permitted to take, use and enjoy all the profits and income of my estate, real and personal, without let or hindrance, from the period of my decease, during his natural life, it being my express will and intention, that no part or parcel of the said estate shall in anywise be subject to the debts or contracts of the said William W. DuRant, that do now or may hereafter exist, and it is further my will that after the decease of the said William W. DuRant, then and in that case, the estate aforesaid shall descend to the son of the said William W. DuRant, should any such be then living and called Henry, and in default of such male child, then to such other child or children of the said William W. DuRant as may then be living."

The following authorities show the inclination of the courts to protect the contingent remainders as far as possible:

"The Court of Chancery will never execute the estate in law to tenant for life of a trust, to enable him to destroy contingent remainders." Fearne on Rem., 320.

"Before I dismiss the notice of estates in trustees to support contingent remainders, it may be proper to observe, that although equity does not interpose in cases of the destruction of contingent remainders, by tenant for life, where there is no trust in the case to bring it within the cognizance of a court of equity; yet it views such destruction of contigent remainders in the light of a wrong or tort which it is anxious to prevent; and consequently seizes every occasion and makes every possible stretch for extending its protection against it." Fearne on Rem., 337.

"When the tenant for life is only a *cestui que trust,* he cannot forfeit or bar a remainder by feoffment—the legal title being in the trustee." *Dehon v. Redfern,* Dud. Eq., 115.

"The destruction of contingent remainders by tenant for life is considered as a wrong with remedy, and so strongly a tort that it is a forfeiture of his own estate, and thereupon works destruction of the remainder. Now if equity never suffers any wrongful act, or anything similar, to gain or defeat the trust estate, whilst the trustee is in possession, why should this take place, or the Court strive to preserve a power to *cestui que trust* for life, the execution whereof the law calls a wrong?" 1 Atkyns Rep., 694.

"Another difference between the rules regulating legal estates and trusts, applies to contingent remainders, By the common law, if the particular estate by which such remainder is supported, is destroyed by the act of the tenant before the remainder becomes vested, the remainder is itself destroyed. But no such consequence will follow, in respect to a contingent remainder of the equitable ownership, by any act proceeding from the tenant of a prior particular estate of the same equitable ownership. * * * In short, the equitable effect of the trust is commensurate with the legal effect of an executory use (as distinguished from a contin-

gent remainder), both equally rejecting the strict rules of the common law." 2 Wash. on Real Prop., sec. 1458.

"In trust estates, though generally governed, so far as contingent remainders are concerned, by the same rules as estates at common law, a rule prevails that a legal estate of freehold in the trustee, will support a contingent limitation of the estate of a *cestui que trust,* although this may not vest by the time the preceding equitable limitation in trust expires. Nor can any *cestui que trust,* having a prior trust estate, destroy a contingent remainder expectant upon his estate by any mode of conveyance, since the legal estate in the trustee will support the remainders as they rise." 2 Wash. on Real Prop., sec. 1594.

Realizing the injustice of permitting a life tenant to destroy a contingent remainder, a statute was enacted in 1833, providing that "no estate in remainder, whether vested or contingent, shall be defeated by any deed of feoffment with livery of seizin." That statute, however, only applies to cases arising since its enactment.

In the case of *Posey* v. *Cook,* 1 Hill, 413, the plaintiff claimed the land as trustee under a deed of conveyance executed by Thomas Posey, in trust for the use and benefit of Charles Posey, "until his youngest son, William Posey, shall arrive at the age of twenty-one years, or if the said Charles Posey should die before that period, then for the benefit of his family until that time; as a house for his wife and children; but it is expressly understood that the said tract of land and premises, is not to be liable for the present debts or future contracts of the said Charles Posey," etc.

The presiding Judge nonsuited the plaintiff on the ground that the legal estate was not in the trustee.

The Court, per Harper, J., used this language: "*In Gregory* v. *Henderson,* 5 Taunt, 772, the devise was to trustees, to permit testator's wife to occupy, possess, and enjoy the premises, and to receive the rents; her receipts for which, with the approbation of the trustees, to be good. This was held not to be executed. The Court puts it on the *intention,*

that the legal estate should not vest in the wife, and laid hold of the circumstance of the trustee's approbation being required to the receipts, as indicating the intention. Perhaps the rule might be more accurately expressed to say, that where the intention is, that the estate shall not be executed in the *cestui que use,* and any object is to be effected by its remaining in the trustees, there it shall not be executed. In the present case, there can be no doubt about the intention. The donor declares that it shall not be subject to the debts or contracts of Charles Posey. This can not be, if he is to have the legal estate. The object to be effected is, that the trustees shall retain the legal estate, so as to protect it from being sold for Charles Posey's debts, until the period of division shall arrive, and in the event of his death before that period, to preserve it as a home for his wife and children."

The words "it being my express will and intention that no part or parcel of the said estate shall in any wise be subject to the debts or contracts of the said William W. DuRant, that do now or may hereafter exist," bring the case under consideration within the principle just stated, as they clearly show that the duty imposed upon the trustees rendered it necessary for the legal title to remain in them, in order to prevent the land from being made subject to the debts or contracts of the life tenant.

The respondents, however, contend, that when there are persons entitled to different beneficial interests in the trust estate, the use may be executed as to some, and not as to others; and that even if there was a duty in this case resting upon the trustees, that required the legal title to remain in them in so far as the life testate was concerned, they nevertheless had no duty to perform with reference to the contingent remaindermen, and that the use was therefore executed as to them.

The principal cases relied upon by them to sustain these propositions, are *Faber* v. *Police,* 10 S. C., 376, and *Howard* v. *Henderson,* 18 S. C., 184.

There is no doubt as to the principle, that when estates are conveyed to trustees for the benefit of parties taking different interests, the statute may execute the use in one and not in the other. This proposition is fully sustained by the case of *Howard v. Henderson,* 18 S. C., 184.

In the case of *Faber v. Police,* 10 S. C., 376, 390, C. H. Faber, by his will, devised certain lands to trustees for the use of his son, John Lewis Faber, for life, and from and immediately after the death of his son, in trust for the lawful issue of said son living at the time of his death; and in case of his death without leaving issue living at the time of his death, then to his residuary legatees and devisees. The tenant for life made a deed of foeffment with livery of seizin, and the other heir of the testator released all interest in the land. The question was whether this conferred a good title on the purchaser.

The Court held that the deed of foeffment with livery of seizin defeated the estate of the contingent remaindermen, and together with a release of all right on the part of the testator's other heir, conferred a marketable title, which the purchaser was bound to accept. In discussing the question whether the use was executed, the Court used the following language:

"It is argued, however, that though the will does not in terms create a trust to preserve the contingent remainders, yet that such a trust may be implied. We know of no authority for such a position, and none has been cited. We are at a loss to conceive by what right a court could undertake to add to the words of a will, by which additional trusts to those which the testator has seen fit to declare should be raised. It is very true that in some cases, where no trusts whatever are declared, a court of equity will imply a trust from the conduct and relation of the parties, as where one purchases lands with the money of another, and takes title in his own name, or where one comes into the possession of trust property, with notice of the trust, or where, prior to the Constitution of 1868, property was given for the sole

and separate use of a married women. But where the owner of property in disposing of it, either by deed or will, declares the trusts upon which he desires it to be held, we are unable to see by what authority a Court could undertake to add to the trust so declared.

"We think, therefore, upon principle, as well as upon express authority, especially the case of *Ramsey v. Marsh, supra,* where the trusts declared were very much the same as in the case now under consideration, that the legal title to the premises in question was, by the operation of the Statute of Uses, vested in the *cestui que use.*"

The Court does not indicate in what manner the statute executed the use. When C. H. Faber devised the land to trustees for the benefit of his son for life, and after his death to his issue living at that time, he thereby created two equitable estates—one for life and the other in contingent remainder. When the statute executed the use in John Lewis Faber the life tenant, *it could not clothe him with the legal title to a larger estate than the equitable estate conferred upon him by the will.*

This surely must have been the views of the Court, for if it supposed that the entire fee was vested in him by operation of the Statute of Uses, then there was no necessity for the Court to have discussed at great length the effect of the deed of foeffment with livery of seizin, upon the rights of the contingent remaindermen, as in that event it would only have been necessary for John Lewis Faber to tender an ordinary deed, in the form prescribed in the Code of Laws.

Nor can the position be accepted that John Lewis Faber thereby became a trustee for the contingent remaindermen; for the selection had already been made by the testator, and the Court should not allow another trustee to be substituted by mere operation of law, as this would defeat the intention of the testator. The object in executing the use, is to free the estate from the control of the trustee, which would not be effected by a mere substitution.

Nor can it be successfully contended that the statute executed the use in the contingent remaindermen, for one of the requisites to the execution of the use is that the *cestui que use* should be ascertained, and capable of enjoying the estate at that particular time, which was not the case when, as contended by the respondent's attorneys, the contingent remaindermen were vested with the legal, instead of the equitable title, as it could not be ascertained until the death of the life tenant who would take in remainder.

When the trustees accepted the trust, it became their duty to hold the property until the beneficiaries therein mentioned could be ascertained.

"Three things must concur to give the statute effect: *first,* a person *seized* to a use; second, a *cestui que use in esse;* and *third,* a use *in esse,* either in posseion, reversion or remainder." 2 Wash. on Real Prop., 1351.

"In order to have an estate take effect under the statute, there must be a *cestui que use in esse.* And if an estate is limited to the use of some one not *in esse,* or capable of being ascertained, the statute can not have any operation, *until* the *cestui que use* comes into being, or is ascertained, and in the meantime the use will remain in the original grantor waiting to be executed by the statute whenever there shall be a *cestui que use* to take it." 2 Wash. on Rel. Prop., section 1356. See also 28 Ency. of Law, 929, 930.

Our conclusion, therefore, is that the use was not executed either in the life tenant or in the contingent remaindermen.

The exceptions also assign error in the ruling of his Honor, the presiding Judge, that the deed of conveyance by William W. DuRant to James Beaty, in 1838, purporting to convey the fee, did not defeat the contingent remaindermen.

As stated by the respondent's attorneys, this question does not arise if the statute did not execute the use, and as we have shown that the use was not executed, it, therefore, will not be considered.

There was testimony tending to show that the defendant, and those under whom he claimed title, had been in possession of the land since 1838, when W. W. DuRant conveyed to James Beaty. The legal title after said conveyance remained in the trustees, but their right and that of the *cestui que trust* was subject to be defeated by the statute of limitations, adverse possession, and the presumption of title in the defendant, arising from long, continuous and hostile possession. *Benbow* v. *Levi,* 50 S. C., 120, 27 S. E., 655. The inference to be drawn from these facts should have been submitted to the jury.

The defense based upon section 109 of the Code is disposed of by what was said in the case of *Sutton* v. *Clark,* 59 S. C., 440, 453, 38 S. E., 150: "It had not been forty years since the Code was adopted when this action was commenced, and its provisions did not extend to cases where the right of action had already accrued. Code, sec. 93. In fact, section 109 of the Code does not seem to have been enacted until several years after its adoption, as it does not appear in the Rev. Stat. of 1873."

The next question involves the construction of the Greenwood grant.

The defendant introduced in evidence the same chain of title as the plaintiffs, except the deed from W. W. DuRant to James Beaty. He also introduced in evidence a grant from King George of England to James Greenwood, dated 17th March, 1775, which, it was contended, conveyed the land in dispute, subject to certain conditions therein mentioned.

The presiding Judge ruled as follows:

"As to the Greenwood grant, I held that no one being before the Court asserting any interest in that grant, the original grantee not asserting any interest under it, and the grant on its face being a conditional grant, the presumption is that the conditions have not been complied with, and that is not enough to show the title out of the State of South

Carolina—the presumption being that the title is in the State."

In the case of *Riddlehoover* v. *Kinard,* 1 Hills. Ch., 376, 377, the Court says: "The lapse of twenty years is sufficient to raise the presumption of a grant from the State, of the satisfaction of a bond, mortgage or judgment, or of the grant of a franchise or the payment of a legacy, or almost anything else that is necessary to quiet the title of property." This language is quoted with approval in the case of *Corbett* v. *Fogle,* 72 S. C., 312, 320, in which the Court used this language: "The lapse of twenty years afforded evidence of acquiescence on the part of Emiline O. Fogle in the terms of the deed; and likewise of any fact necessary to give it full force and efficacy."

After the lapse of twenty years the presumption was that the grantee, and those claiming under him, had complied with the conditions mentioned in the grant.

The authorities in this State settle the rule that a defendant may introduce in evidence a deed in a third party with which he has no connection, as this tends to defeat the plaintiff's action. *Martin* v. *Ranlett,* 5 Rich., 541; *Sutton* v. *Clark,* 59 S. C., 440, 38 S. E., 150; *Love* v. *Turner,* 71 S. C., 322, 51 S. E., 101; *Pooler* v. *Smith,* 73 S. C., 108, 52 S. E., 967; *Blount* v. *McGuire,* 199 U. S., 142; Sedgwick & Wait on Trial of Title to Land, secs. 57 and 477.

The next question for consideration is, whether the exception can be sustained, which assigns error "in allowing the witness Virginia D. Young to testify as to the death of her grandfather, Henry DuRant, basing her testimony upon a written memorandum, which she testified had been taken from a family Bible; whereas, he should have held that the memorandum referred to could not be used by the witness to refresh her memory, unless she had made the memorandum herself, or seen it made."

When objection was made to this testimony, the witness testified, without objection, that she had seen the tombstone

of her grandfather, and it shows that he died in 1837. Therefore, even if the testimony mentioned in the exception was inadmissible, it was immaterial.

Another exception assigns error on the part of the presiding Judge, in refusing to allow the defendant's attorney to address the jury.

The question whether there was any testimony to be considered by the jury was one of law, upon which the defendant's attorney had the right to be heard by the presiding Judge, and this right was accorded him. He, however, was not entitled to be heard upon the facts before the jury, after the presiding Judge ruled that there were no questions of fact in the case, as it would have been merely a useless consumption of time. The jury was bound to render a verdict in accordance with the directions of the Court. If the Judge was in error, the parties had the right to correct his ruling by appeal. It would, however, tend to great disorder if the jury had the right to disregard the instructions of the presiding Judge, and would subject its members to punishment for contempt of Court.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed and the case remanded to that Court for a new trial.

JUDGE JAMES ALDRICH *sat as Associate Justice in this case in place of* MR. JUSTICE WOODS, *disqualified.*

September 11, 1907. PER CURIAM. After careful consideration of the petition herein, this Court is satisfied that no material question of law or of fact has either been overlooked or disregarded.

It is, therefore, ordered, that the petition for a rehearing be dismissed and that the order heretofore granted staying the remittitur be revoked.