# CHARLESTON.

C. R. COVERT *et al v.* CHESAPEAKE & OHIO RAILWAY Co.

Submitted October 21, 1919.    Decided October 28, 1919.

1.  WITNESSES—*Surveyor's Blueprint Admissible for Explanation of his Testimony.*

    A map or blue print made by a surveyor, though not evidence independently of his testimony, is properly admitted in connection therewith for illustration and explanation of his evidence.   (p. 66).

2.  EVIDENCE—*Opinions of Non-Experts as to Damages to Riparian Owner.*

    The opinions of non-expert witnesses acquainted with the facts and with opportunity and occasion to observe the action of flood waters in a stream, that damages done thereby to the property of a riparian owner were the result of the obstruction placed by defendant in the channel of such stream, is competent and admissible in evidence on the trial of an action for such damages.   (p. 66).

3.  WATERS AND WATER COURSES—*Recovery by Occasional Damage to Lands of Riparian Owners.*

    Where a railroad company or other person by temporary or permanent structures or fills built in a stream obstructs the channel and thereby diverts the regular flow of the waters therein resulting in occasional damages to the lands of a riparian owner, such damages in contemplation of law are impermanent, continuous and temporary, as distinguished from permanent damages, and recovery therefor is limited to the damages as from time to time they occur.   (p. 66)

4.  SAME—*Temporary Damages by Obstruction of Streams.*

    In the trial of an action for such impermanent damages it is error to admit evidence of prospective or future damages liable to be sustained by such riparian owned.   (p. 66).

5.   SAME—*Instruction as to Limitation of Recovery for Temporary Damages.*

   And an instruction to the jury in such an action, on the subject of damages, which does not limit recovery to such impermanent or temporary damages as have accrued, constitutes reversible error.   (p. 68).

Error to Circuit Court, Boone County.

Action by C. R. Covert and others against the Chesapeake & Ohio Railway Company.   Verdict and judgment for plaintiffs, and defendant brings error.

*Reversed, and remanded for new trial.*

*Fitzpatrick, Campbell, Brown & Davis* and *C. W. Strickling,* for plaintiff in error.

*L. Fulton,* for defendants in error.

MILLER, PRESIDENT:

Plaintiffs sued defendant for damage to their six houses and four lots (sub-divided) in Laurel City addition to the town of Clothier, located on the east bank of Spruce Fork of Little Coal River, in Boone County, and obtained a verdict and judgment for one thousand dollars, of which the defendant complains.

The declaration, in one count, we think good, and the demurrer thereto was properly overruled.   The gravamen of the action is that plaintiffs, before or during the progress of the work doing the injury, constructed six houses on said lots; that the defendant owned and operated on the west bank of said river the Spruce Fork Branch of its railway; and that beginning in the early spring of 1915, it filled in with stone and earth a large part of the main channel on the west side of the river opposite their lots located on the east bank; whereby the said river during freshets therein was turned out of its regular channel and thrown over against the east bank, whereby plaintiffs' lots were washed by the waters and caused to fall in and do them the damages for which redress is sought at the hands of the railway company. Their theory was that the fill on the west bank crowded the main channel, forced the waters back and over into the secondary channel opposite their lots, thereby depriving them of the right to have the waters flow in their natural course undisturbed,

unless compensated in damages by the defendant company for the injuries sustained thereby.

The first complaint is that the court over defendant's objection admitted improper evidence. A part of this evidence consisted of a map or blue print made by one of the surveyors, not claimed by him to be entirely accurate, but used and referred to by him to illustrate and apply his evidence to the conditions on the ground, and admitted in evidence for that purpose. Of course the map itself was not evidence independently of the testimony of the witness, but it was properly admitted in connection therewith to illustrate and make his testimony clear to the jury. For such purpose it was admissible, and there was no error. *State* v. *Harr*, 38 W. Va. 58; *Poling* v. *Ohio River Railroad Co., Id.* 645; *King* v. *Jordan*, 46 W. Va. 106.

Another point on the admission of evidence is that certain non-expert witnesses were permitted to give in evidence their opinions that the alleged damages to plaintiffs' property were the result of the fill made by defendant in the river. We do not think there is any substantial merit in this point. The witnesses so examined were residents of the village or neighborhood and acquainted with the conditions before and after the fill was made, and their opinions based thereon were competent to go in evidence to the jury for what they were worth. This rule is well established by our decisions. *Walker* v. *Strosnider*, 67 W. Va. 39; *Kunst* v. *Grafton, Id.* 20; *Cline* v. *N. & W. Railway Co.*, 69 W. Va. 436, 438.

Another point involving, it is claimed, more serious consequences, is that plaintiffs were permitted over defendant's objection to prove by a number of witnesses as the basis of recovery the market value of their property immediately before and the value thereof after the fill and the resulting injury up to the time of the institution of this suit, but not including any probable damages or injury from subsequent actions of the river. The theory upon which plaintiffs proceeded at the trial and on which the case was submitted to the jury was that the damages were not permanent but impermanent or continuous and recurrent, and that they were properly limited in their recovery to damages accrued up to the time of the bringing of the suit,

and on this theory the railway company as well as the trial court seems to have concurred.

The law laid down by prior decisions of this court is that where a railroad company or other person by structures built in a stream, whether permanent or temporary, changes the current of the stream and causes it from time to time as freshets come to wash away the land of a riparian owner and to do him injury, such injury is not of a permanent nature in law, but intermittent, recurrent and continuous, so that damages once for all cannot be recovered. *Eells* v. *Chesapeake & Ohio Railway Co.,* 49 W. Va. 65; *Pickens* v. *Coal River Boom & Timber Co.,* 51 W. Va. 445; *Same* v. *Same,* 66 W. Va. 10; *McHenry* v. *City of Parkersburg, Id.* 533. In the second of the Pickens cases cited Judge BRANNON re-examined the questions with reference to our prior decisions and cases cited from other states, and reaffirmed the proposition as to the character of such damages and the doctrine of the prior decisions. · The test according to these authorities is whether the whole injury results from the original tortious act or from the wrongful continuance of the state of facts produced by those acts. As Judge BRANNON says, page 17, "We do not test the matter only by the permanent or impermanent character of the structure, but by the damage. Does it all occur at once or come occasionally or as time goes on?"

We agree with counsel on both sides of the case that the facts proven call for the application of the rule relating to impermanent or continuous and recurrent damages. But the point of error urged by counsel for defendant is that conceding the character of the damages, the court admitted evidence of permanent damages. The evidence of plaintiff C. R. Covert and of a number of his other witnesses on this subject was that prior to the filling in of the river by defendant, the value of the entire property, consisting of the four lots and six houses, was $5,500.00 to $6,000.00. Following which the question put to each of these witnesses substantially was: "Leaving out of consideration the question of future damages to the property from washings, what would you consider the fair market value of the property as it existed on September 20, 1916, the date of the institution of the suit?" The answers generally were, about $3,500.00, the difference, $2,000.00, being the estimated damages. We see nothing

particularly wrong with this evidence, if in their estimate the witnesses limited themselves to the elements properly entering into such impermanent damages, such as loss of rental value, the value of the land actually taken or washed away, interference with egress and ingress to the property, or other physical damage thereto, if any. There was some evidence of loss of rental value, but none except as may have been covered by the evidence relating to the value of the property before and after the building of the work as to the value of the land washed away. There was some evidence of interference with egress and ingress to the rear ends of the lots. The character of the questions propounded to these witnesses was very like the questions allowed in *Cline* v. *N. & W. Railway Co., supra,* relied on by plaintiffs in this case. In the case here, however, the plaintiffs and some of their own witnesses were permitted to depart from these elements of damages and to introduce elements of permanent damages. For example, plaintiff C. R. Covert testified that he would not want to make investments in the property under present conditions, that he did not consider the property safe on account of the fill, and that he would not want to put his money in something that was not safe, showing that he had in mind permanent and future damages. Another witness seems to have taken into consideration the fact that plaintiffs did not own the lots above theirs where any work would have to be done to protect their lots. Besides, an instruction to the jury to be hereafter disposed of shows that the case as submitted to the jury did not properly limit them to temporary damages, as did the instructions in the Cline case.

Counsel for defendant rely on the rule in *McHenry* v. *City of Parkersburg, supra,* and *Pickens* v. *Coal River Boom & Timber Co.,* 66 W. Va. 10. In the McHenry case it was held to be reversible error in a case of impermanent or recurring damages to admit evidence of the difference between the value of the property before it was subjected to the injury and its value afterwards. But in that case the witnesses were not called upon, as here and in the Cline case, to exclude prospective or future damages.

The next point of error involves the instructions to the jury, given and refused. Defendant's instruction number 1, a peremptory instruction to find for the defendant, was properly re-

fused. It was probably based on the theory that the fill did not cause the damages. But on this point the evidence was conflicting, and the fact was one for the jury. Instructions number 2, 4-½ and B., on the theory of want of negligence in the construction of the work by the defendant, were properly refused. Plaintiffs did not allege or rely on, or attempt to prove negligent construction of the work, but the damaging of their property for public use without just compensation by defendant. Defendant's instruction "Z" would have limited plaintiffs in their recovery simply to loss of rental value of the property. This is not the law. Certainly if entitled to recover anything, they would be entitled to damages for land actually taken and sustained by physical invasion of their property up to the time of the suit.

Of plaintiffs' instruction number 1, based on the theory of a diversion of the waters from their natural course by the defendant and causing the cutting away of a portion of their lots, it tells the jury if they so find, they should also find for the plaintiffs. This instruction is good as far as it goes, although it does not limit them in the amount of damages or define the rule of measurement to govern them in their findings.

Instruction number 2 is plainly bad in so far as it told the jury that the measure of damages was the difference between the market value of the property immediately before the first washing of the property after the fill was built, as given in evidence, and its market value on September 20, 1916. It did not exclude prospective or future damages, and as there was some evidence of permanent and future damages admitted, the instruction based thereon was calculated to mislead the jury into an improper finding. Such an instruction is condemned by the McHenry case. In the Cline case the instruction given was properly confined to damages accrued to the date of the suit and excluded prospective or future damages.

It is argued that the verdict was excessive, but as there is to be a new trial, it is not proper to consider that question.

Our conclusion is to reverse the judgment, set aside the verdict, and award the defendant a new trial.

*Reversed, and remanded for new trial.*