377 S.E.2d 493

**Myrtle Sue BLAIR, Plaintiff Below, Appellant,**

v.

**Amos PREECE and Hazel Preece, Defendants Below, Appellees.**

No. 18477.

Supreme Court of Appeals of West Virginia.

Dec. 21, 1988.

Rehearing Denied Feb. 22, 1989.

Myrtle Sue Blair, Huntington, for appellant.

W. Truman Chafin, Williamson, for appellees.

PER CURIAM:

This is an appeal by Myrtle Sue Blair from a judgment of the Circuit Court of Mingo County in a boundary line dispute.[1] On appeal the appellant, who represented herself during trial, alleges that the circuit court made numerous procedural errors. Prominent among them are that the court erred in allowing the appellees, Amos Preece and Hazel Preece, to introduce into evidence a map prepared by a surveyor, James A. Coleman, and that the jury's verdict was not supported by the evidence. After reviewing the record, this Court can find no reversible error. Accordingly, the judgment of the Circuit Court of Mingo County is affirmed.

This case was tried before a jury on June 29 and June 30, 1987. The evidence showed that the appellant and the appellees owned adjoining parcels of real estate located in Kermit, West Virginia. Both parcels had, in the early 1940's, belonged to J.B. and Stella Crum. The property, as owned by the Crums, was described as Lots 79, 80, 81, 82, 83, and five feet of Lot 84 in Block 4 of the Town of Kermit, Mingo County, West Virginia. On April 22, 1944, the Crums conveyed the property to C.A. and Nanny Branham, who, in turn, by deed dated September 7, 1946, conveyed a part of the property to Essie Puglici, the appellant's mother. The property conveyed to Essie Puglici was described by metes and

---

1. This dispute was previously before the Court in *Blair v. Preece,* 176 W.Va. 532, 346 S.E.2d 50 (1986). In that case the Court addressed the question of whether the trial court properly entered default judgment against the appellant at the close of her case. The Court, after analyzing the evidence, concluded that when the inferences arising from the evidence adduced were indulged favorably to the appellant, as is required by our law, they were sufficient to establish a *prima facie* case. Under the circumstances, the Court concluded that the trial court erred in directing a jury verdict against the appellant.

bounds rather than by reference to lot numbers.

The residue of the Branham property in time passed to Esther Cooper, who, by deed dated August 1, 1962, conveyed it to Amos and Hazel Preece, the appellees. In the deed to the Preeces the property was described as Lots 79, 80, 81, 82, 83, and five feet of Lot 84, all in Block 4 of the Town of Kermit, Mingo County, West Virginia. There, however, was excepted from the conveyance a strip which had been transferred by the Crums to H.K. Curry.[2] There was also excepted from the transfer the property which had been transferred by the Branhams to Essie Puglici. The language creating the exception to Essie Puglici provided:

> There is further reserved from this conveyance that part of said lots described herein that was conveyed unto Essie Puglici from C.A. Branham and Mannie Branham, by deed dated the 7th day of September, 1946, and which is of record in the aforesaid clerk's office in Deed Book No. 101, at page 406 thereof.

After receiving her portion of the Branham property, Essie Puglici, in 1953, transferred a life estate in it to her husband, Pete Puglici. Essie Puglici survived her husband and as remainderman reacquired full ownership of the property. Subsequently, by deed dated November 16, 1980, Mrs. Puglici transferred the property to her daughter Myrtle Sue Blair, the appellant.

Upon receiving the property the appellant investigated the boundaries to it and decided that a strip of land which the Preeces and their predecessors had been using actually belonged to her. This action was instituted to resolve the question of who owned that disputed strip.

The Preeces took the position that they owned the disputed strip through one of two legal principles. First, they contended that the metes and bounds out-conveyance made by the Branhams to the appellant's mother, Essie Puglici, did not include the disputed strip. To establish this point they

called as a witness Mr. James A. Coleman, a licensed surveyor. He had surveyed the property and prepared a plat of it. His testimony indicated that the disputed strip was not included in the conveyance to Essie Puglici. The Preeces' second position was that even if Essie Puglici, and by succession the appellant, had acquired record title to the disputed strip, they, the Preeces, had acquired actual title by adverse possession. To establish this point they introduced evidence showing that their predecessor in title, Ira Cooper and his wife, had claimed the real estate in dispute beginning in 1950. They also showed that Essie Puglici, who had lived next to the disputed land, had not disputed their ownership or that of their predecessors for thirty years. They took the position that the disputed property had been actually used in conjunction with their claim for parking spaces over a lengthy period of time.

At the conclusion of the evidence in the case, the appellant offered a large number of instructions, certain of which were given by the trial court and others of which were refused. Subsequently, the jury, after hearing the instructions, returned a verdict in favor of the Preeces.

The appellant's first contention in the present proceeding is that the trial court erred in admitting the plat into evidence and allowing the jury to consider it as a basis for the its verdict. In arguing the point, however, the appellant does not focus on the admissibility of the survey, but rather on the surveyor's conclusion as to the location of the boundary line in dispute.

In the course of the trial Mr. Coleman, the surveyor for the Preeces who had prepared the map, explained how he had surveyed the line in question and how he had drawn his sketch. He indicated that during his survey he had located certain iron pins noted on his plat. He explained how his survey findings differed from what the appellant claimed, and he indicated that the plat showed how he thought the lines ran.

■ It is within the broad discretion of a trial court to determine whether to admit

---

2. This strip is not in issue in the present case.

sketches, maps, or diagrams. *State v. Sibert*, 113 W.Va. 717, 169 S.E. 410 (1933); *Hoge v. Ohio River Railroad Co.*, 35 W.Va. 562, 14 S.E. 152 (1891). Also, a map made by a surveyor, although not evidence independent of his testimony, is properly admissible in connection with his testimony for illustration and explanation of his evidence. As stated in syllabus point 1 of *Covert v. Chesapeake & Ohio Railway Co.*, 85 W.Va. 64, 100 S.E. 854 (1919):

> A map or blue print made by a surveyor, though not evidence independently of his testimony, is properly admitted in connection therewith for illustration and explanation of his evidence.

■ It appears that Surveyor Coleman explained in considerable detail how he conducted his survey and how he reached his opinions as to the location of the boundary line in question. He used the plat to illustrate his testimony. Under the circumstances, the trial judge did not abuse his discretion in admitting the plat into evidence. Although Surveyor Coleman's findings were contrary to the appellant's belief as to where the boundary line ran, he was a licensed surveyor in the State of West Virginia.

The appellant next claims that the trial court erred in refusing to give certain instructions offered by her on the effect of the existence of life estates on adverse possession.

As previously indicated, an alternative position assumed by the appellees, the Preeces, was that they owned the property in dispute by adverse possession. To counter this position, the appellant offered five life estate instructions. The giving of the instructions was prompted by the fact that the appellant's predecessor in interest, Essie Puglici, had created a life estate in her property in 1953, three years after the Preeces' predecessor in interest, Ira Cooper, had taken possession of the property in dispute. The appellant asserted that the creation of the life estate affected the running of the period of limitations for adverse possession, and that the Preeces could not thus own the property in dispute by adverse possession.

■ Even assuming that the instructions properly propounded the law, this Court, after examining the facts, does not believe that the appellant's position is supported by the law and record. The law is clear that once adverse possession is commenced, the process is not interrupted by the creation of a life estate thereafter so as to relieve the remainderman of the affect of the adverse holding. *See* 3 Am.Jur.2d, *Adverse Possession*, § 266; *Sutton v. Clark*, 59 S.C. 440, 38 S.E. 150 (1901); *Kidd v. Browne*, 200 Ala. 299, 76 So. 65 (1917). The Preeces' evidence shows that their predecessor in interest took actual possession of the property in dispute before Essie Puglici created the life estate in favor of her husband.

■ Another point asserted by the appellant is that the trial court should have refused to give the Preeces' adverse instructions in this case. She claims that if the Preeces had done a title search they would have learned that they did not own all that they claimed to own, and that their failure to do a title search constituted a bar to adverse possession.

■ In syllabus point 3 of *Somon v. Murphy Fabrication & Erection Co.*, 160 W.Va. 84, 232 S.E.2d 524 (1977), this Court stated what is necessary to establish adverse possession:

> One who seeks to assert title to a tract of land under the doctrine of adverse possession must prove each of the following elements for the requisite statutory period: (1) That he has held the tract adversely or hostilely; (2) That the possession has been actual; (3) That it has been open and notorious (sometimes stated in the cases as visible and notorious); (4) That possession has been exclusive; (5) That possession has been continuous; (6) That possession has been under claim of title or color of title.

The appellant apparently is taking the position that adverse possession is not assertable against one who has record title. She apparently is unaware of the fundamental character of adverse possession which deprives the record holder of property of his ownership by acts constituting adverse possession. As stated in 3 Am.Jur.2d *Adverse Possession* § 2 p. 94 (1986):

[A]dverse possession is the ripening of hostile possession, under proper circumstances, into title by lapse of time. Adverse possession has been defined as an actual and visible appropriation of property commenced and continued under a claim of right inconsistent with and hostile to the claim of another. [Notes omitted.]

■ The appellant also claims that the trial court erred in refusing to give a number of instructions which she offered. Several of those instructions were irrelevant to the issues in the case. For instance, by her proposed instruction No. 17, she sought to have the jury instructed on when deeds were admissible into evidence, even though the court had already admitted all deeds which the appellant had sought to admit. By her instruction No. 18 she sought to have the jury instructed on the powers of trustees even though there was no trustee issue in the case.[3] By her instruction No. 13, she sought to have the court define the word "assigns" to the jury; there was no assignment issue in the case. As indicated in *Adkins v. Whitten*, 171 W.Va. 106, 297 S.E.2d 881 (1982), it is the duty of a trial court to inform the jury as to the law applicable to the facts of the case. The refusal to give an irrelevant instruction is not error.

■ Certain of the appellant's proffered instructions were binding and would have precluded the jury from considering the Preeces' theories in the case. For instance, her proposed instruction No. 20 said:

> The court instructs the jury that if you find that the release issued by the Branham's to Essie Puglici on September 12, 1946 to Essie Puglici granted to her and to those who follow in her chain of title, then you must find for the plaintiff that she has good title to a parcel of land in Kermit, Mingo County, West Virginia beginning at the corner of lot 81 and fronting Route 52 a distance of 55 feet and following lot 81 back from the street a distance of 89 feet and being *part* of lots

82, 83 and five feet of lot 84 as shown on the plat of the town of McCarthy Survey for the Triple State Natural Oil and Gas Company and recorded in October of 1904.

Binding instructions are not proper for the jury. *State v. Parks*, 161 W.Va. 511, 243 S.E.2d 848 (1978).

■ A number of other instructions were unsupported by the evidence. Such instructions are not properly admissible, and the trial court did not err in refusing to give them. *Jenrett v. Smith*, 173 W.Va. 325, 315 S.E.2d 583 (1983); *Hovermale v. Berkeley Springs Moose Lodge No. 1483*, 165 W.Va. 689, 271 S.E.2d 335 (1980).

■ Lastly, the appellant claims that the trial court erred in denying her motion for judgment notwithstanding a verdict. In the course of the trial the Preeces, the appellees, introduced the testimony of a surveyor suggesting that the boundary line in question ran where they claimed it ran. They also introduced evidence to support a claim of adverse possession. The appellant did not adduce the testimony of a surveyor, but did introduce a chain of documents suggesting that the boundary line ran where she claimed it ran.

This Court believes that the parties' evidence was conflicting, and that, under the circumstances, it was the jury's role to resolve the conflict. The jury's conclusion that the Preeces owned the property in question was supported by substantial evidence. Only when the evidence decidedly preponderates against the verdict of the jury should it be set aside. *Estate of Bayliss by Bowles v. Lee*, 173 W.Va. 299, 315 S.E.2d 406 (1984).

For the reasons stated, the judgment of the Circuit Court of Mingo County is affirmed.

AFFIRMED.

---

**3.** The appellant did introduce certain deeds of trust, but the relevance of those documents was in the fact that the grantors of those deeds of trust continued to recognize that certain property described by metes and bounds had been conveyed to Essie Puglici, not that the trustees were granted powers by the deeds of trust.