# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Dean Lowe and Martha Lowe, individually and
as Trustees of the Demar Revocable Trust,
Defendants and Third-Party Plaintiffs Below, Petitioners**

**FILED**

**October 7, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 15-0718** (Berkeley County 11-C-979)

**Hugh Hegyi, Trustee of the Hegyi Trust,
Plaintiff and Counter-claim Defendant Below, Respondent,**

**and**

**Joseph C. Richards and Joyce C. Richards,
Third-Party Defendants Below, Respondents**

## MEMORANDUM DECISION

Petitioners Dean Lowe and Martha Lowe, individually and as Trustees of the Demar Revocable Trust, by counsel Michael L. Scales, appeal the "Order Denying Defendants Lowe's Motion to Arrest Judgment, Set Aside the Verdict and Award Defendants Lowe a New Trial," entered by the Circuit Court of Berkeley County on July 16, 2015, following an adverse jury verdict in a property dispute. Respondent Hugh Hegyi, Trustee of the Hegyi Trust, by counsel Ancil G. Ramey, filed a response. Additionally, respondents Joseph C. Richards and Joyce C. Richards, pro se, filed a response. Petitioners filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### Factual and Procedural Background

This case originated with the filing of a civil action in 2011 by Respondent Hugh E. Hegyi, Trustee of the Hegyi Trust (hereinafter "Hegyi Trust"), in the Circuit Court of Berkeley County. The Hegyi Trust sought declaratory and injunctive relief as to the use of a dirt road, referred to by the circuit court and the Hegyi Trust as the "Old Post Road,"[1] located in Berkeley

---

[1] In their reply brief filed with this Court, petitioners object to the use of the name "Old Post Road" to historically refer to the road at issue. They state that the term "Old Post Road" did not originate until the late 1990s.

1

County through property owned by Petitioners Dean and Martha Lowe, individually and as Trustees of the Delmar Revocable Trust (collectively "petitioners"). The Hegyi Trust claimed that the road provided access to its property, which consisted of approximately twenty-five acres, on which the Hegyi Trust had built a hunting cabin. The Hegyi Trust property and the petitioners' property lie adjacent to the Virginia/West Virginia border. Petitioners filed a counterclaim against the Hegyi Trust and a third-party complaint against Respondents Joseph and Joyce Richards (collectively "the Richards").[2] The Richards own a parcel of land in Virginia that adjoins the Hegyi Trust property and petitioners' property. The parties disputed the location of certain boundary lines between their respective properties.

The case proceeded to an eight-day jury trial in late April through early May of 2015. In summary, the Hegyi Trust called seventeen witnesses, all of whom testified to the existence of, or their use of, the Old Post Road to access the Hegyi Trust property going back to when Herman Hegyi bought the property around 1967, or prior thereto. Two of the Hegyi Trust witnesses were land surveyors who had been hired by petitioners, whom petitioners discharged after the surveyors noted the Old Post Road on their respective survey plats. Specifically, the evidence at trial was that Herman Hegyi purchased the twenty-five acre parcel of land around 1967, and placed the property in trust for his four children, who are the beneficiaries. The three

---

[2] Petitioners' counterclaim and third-party complaint against the Richards was the subject of an opinion issued by this Court in 2014. On the motion of the Hegyi Trust, the circuit court dismissed petitioners' counterclaim and third-party complaint on two grounds: (1) it did not have subject matter jurisdiction over the determination of the boundary line between West Virginia and Virginia; and (2) petitioners failed to join the States of West Virginia and Virginia as indispensable parties. In *Lowe v. Richards,* 234 W.Va. 48, 763 S.E.2d 64 (2014), this Court reversed the dismissal of the counterclaim and third-party complaint, holding in relevant part, as follows:

> The circuit courts of West Virginia have subject matter jurisdiction to resolve an interstate boundary line dispute between private litigants involving the issue of whether real property is located within the State of West Virginia or another state. Under the decision in *Durfee v. Duke,* 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963), resolution of the boundary line issue by a circuit court is not binding on the affected states.

> In a real property action involving private parties that requires the determination of the boundary line between West Virginia and another state, neither the State of West Virginia nor the other state are required parties to the litigation.

*Id.* at Syl. Pts. 2 and 6. In reversing the circuit court, however, this Court made clear that it had not considered the merits of petitioners' claims; rather, the determination of the merits of petitioners' claims was reserved for resolution on remand. *Id.* at 57 n.11, 763 S.E.2d at 73 n.11.

beneficiaries who testified[3] provided generally consistent testimony that after their father purchased the property, he and/or the family visited a modular home on the property nearly every weekend, and always accessed the property via the Old Post Road. There was also testimony that Herman Hegyi built a hunting cabin on the property, which he allowed hunters in the area to use. Witnesses testified to not only using the Old Post Road as the only access to the Hegyi Trust property, but also to placing shale and bricks on the ground to help maintain the road through the years. One witness, Stephen Butler, a retired attorney who lived in the area who was also qualified as an expert in real estate, testified that the Old Post Road had been maintained in its current condition for about one-hundred to one-hundred fifty years. He added that in the absence of access by the Old Post Road, the Hegyi Trust property would be landlocked.

The testimony further revealed that around the time of Herman Hegyi's death in 2003, petitioners began interfering with the use of the Old Post Road to access the Hegyi Trust property. Petitioners erected a gate that blocked access to the road. Hugh Hegyi, the Trustee of the Hegyi Trust, testified that in late 2002, his father advised him that several hunters had reported being denied access to the road, and asked Hugh Hegyi, as Trustee, to contact petitioners, which he did. Hugh Hegyi testified that, although petitioners did not respond to his letter, he learned that they permitted the hunters to access the road by giving them a key to the lock petitioners had installed. However, Hugh Hegyi testified that soon after his father died, petitioners changed the lock on the gate and refused to allow anyone to use the road. He testified that he was forced the file the instant action after petitioners ignored his attempts to resolve the dispute.

The Hegyi Trust also presented the testimony of two land surveyors who had been hired to survey the property in question. Warren French, a surveyor for Triad Engineering, testified that he was retained by petitioners in 2006 or 2007 regarding the property at issue. He testified that when he advised petitioners that the Old Post Road needed to be reflected on the plat he was preparing for them, they directed him to stop his work and fired him. The other surveyor to testify on behalf of the Hegyi Trust was Galtjo Geertsema, who was engaged by petitioners in the late 1990s. Mr. Geertsema prepared a plat that was introduced into evidence that showed the Hegyi Trust property as extending into West Virginia and referencing the Old Post Road, contrary to petitioners' assertion.[4] Mr. Geertsema testified that the Old Post Road was about eleven feet wide and probably originated before 1880, as evidenced by its reference on a 1937 USGS map on which the road was depicted, and which was based on topographical work from 1914. Mr. Geertsema also testified about his determinations regarding the boundary of petitioners' property, and documentary evidence depicting the boundary was admitted into evidence. Similarly, to Mr. French, petitioners fired Mr. Geertsema based on their disagreement with his work.

---

[3] According to the Hegyi Trust, one of the beneficiaries, Rex Hegyi, was disabled and unable to attend to testify.

[4] Petitioners claim that the plat that was presented to the jury was not the plat that was presented to them in 1997. Petitioners claimed Mr. Geertsema modified the plat in 2014 without changing the original 1997 date thereon.

To rebut the conclusions of Mr. French and Mr. Geertsema, petitioners relied on the testimony of surveyor Edward Johnson. The boundary as determined by Mr. Johnson would have effectively increased petitioners' tract from forty to fifty acres. The Hegyi Trust point out, however, that Mr. Johnson (1) conceded that the Old Post Road that was used to access the Hegyi Trust property was depicted on the 1937 USGS map; (2) relied on some of Mr. Geertsema's work in making his calculations; (3) acknowledged that his opinion of where the West Virginia/Virginia border was located was based upon a determination made in 1899; (4) admitted that he did not examine the Hegyi Trust hunting cabin that had been accessed by the Old Post Road; (5) referred to the Old Post Road as a "logging road" despite contrary testimony; (6) ignored recent survey plats that put the Hegyi Trust property and petitioners' property in West Virginia; and (7) admitted that petitioners had not provided him a copy of Mr. Geertsema's conclusions before they fired him for his review.

After hearing the evidence and weighing its credibility, the jury found in favor of the Hegyi Trust with respect to its claim that it has a prescriptive easement over petitioners' property. The jury further found (1) that the purpose of the easement is for members of the Hegyi Trust and guests to access the Hegyi Trust property; (2) that the easement is eleven-feet wide; (3) the boundary line between the Hegyi Trust property and the petitioners' property is as alleged by the Hegyi Trust; and (4) that petitioners did not acquire by adverse possession property owned by the Hegyi Trust. However, the jury rejected some of the arguments advanced by the Hegyi Trust, namely, that it had an easement by prior use over petitioners' property; that petitioners had trespassed on the Hegyi Trust property; that the Hegyi Trust was entitled to ejectment damages; and that the Hegyi Trust was entitled to damages for annoyance and inconvenience. With respect to the Richards, the jury found, in relevant part, that the Richards proved the location of the boundary line between their property and petitioners' property, and that the Richards acquired 1.8 acres of disputed property by adverse possession. The jury did not award monetary damages to any party.

By "Final Order" entered on July 9, 2015, the circuit court found and ordered, in relevant part, as follows: (1) that the Hegyi Trust is entitled to ejectment of petitioners from all of the lands owned by the Hegyi Trust, as shown on plat of Galtjo Geertsema, dated April 10, 1997; (2) that the Richards are entitled to ejectment of petitioners from all of the lands owned by the Richards, as shown on the Ebert plat; (3) that the Hegyi Trust is entitled to ejectment of petitioners from all obstructions on the road that was the subject of the Hegyi Trust's easement claim, as identified on the above-referenced Galtjo Geertsema plat;[5] (4) that the use of road, referred to by the circuit court as the "Old Post Road," is to be for access to the twenty-five-acre Hegyi Trust property for the use by the Hegyi Trust and beneficiaries, their guests, and the Hegyi Trust heirs, assigns, and grantees, for a width of eleven feet; and (5) that the road appears so prominently on the landscape that no further description is required. Thereafter, petitioners filed

_____

[5] Specifically, the court ordered that petitioners, within thirty days, remove any obstructions from the lane to the lane's full width of eleven feet. However, the court ordered that petitioners not remove the "silver gate at the intersection of the Old Post Road and McCubbins Hollow Road," which was the property of the Hegyi Trust.

4

a motion to arrest judgment, set aside the verdict, and for a new trial, which the circuit court denied by order entered on July 16, 2015.[6] This appeal followed.

**Discussion**

On appeal, petitioners raise seven assignments of error. First, they argue that the circuit court erred in refusing to dismiss the case due to the Hegyi Trust's failure to join the individual trust beneficiaries as indispensable parties. Petitioner's motion to dismiss, and subsequent argument in their motion to arrest judgment, set aside the verdict, and for a new trial, was based upon the premise that the Hegyi Trust was a "dry trust," i.e., a trust that owns nothing. Petitioners based this premise on the assertion that, once Herman Hegyi passed away in 2003, the trustee was required to partition the land among the four beneficiaries, but never did. We review the failure to join indispensable parties under the following standard:

> The determination of whether a party is indispensable under the provisions of Rule 19(a) of the West Virginia Rules of Civil Procedure is in the sound discretion of the trial court. Generally, a court must consider whether: (1) the interest of the absent party is distinct and severable; (2) in the absence of such party, the court can render justice between the parties before it; (3) the decree made will, in the absence of such party, have no injurious effect on the interest of such absent party; (4) the final determination will, in the absence of such party, be consistent with equity and good conscience, but each case must be considered on the basis of its peculiar facts, and the principal limitation on the court's discretion is whether, under the particular facts of each case, absent parties will be adversely affected by non-joinder.

Syl. Pt. 1, *Dixon v. Am. Indus. Leasing Co.*, 157 W.Va. 735, 205 S.E.2d 4 (1974).

We can easily dispense with petitioners' first assignment of error because their argument is founded on an incorrect premise. The evidence in this case does not support the conclusion that the Hegyi Trust was a dry trust because neither party admitted any deed showing that the Hegyi Trust conveyed the property to the trustees. Petitioners' apparent assertion that the Hegyi Trust was required to do so, in and of itself, does not equate or operate to divest the Hegyi Trust of its ownership of the property. Simply put, the title owner of the property is the Hegyi Trust. Under our statutes, the trustee was permitted to file the instant action on the Hegyi Trust's behalf. *See* W.Va. Code § 44-5A-3(w) (authorizing the trustee to "compromise, adjust, arbitrate, sue on or defend, abandon or otherwise deal with and settle claims in favor of or against the estate or trust . . .").[7] Accordingly, we find no error in the circuit court denying petitioners' motion to dismiss for failure to join indispensable parties.

---

[6] Petitioners' motion raised essentially the same arguments presented in their current appeal.

[7] Petitioners also contend that the circuit court erred by addressing this issue under West Virginia law, and should have applied Virginia law. As the Hegyi Trust correctly argues, the application of Virginia law would have yielded the same result.

Petitioners' second assignment of error is that the jury's verdict was not supported by the evidence in the following ways: (1) the Hegyi Trust's expert surveyor, Mr. Geertsema, utilized the wrong standards for boundary line determination; (2) the evidence established that the Hegyi Trust was permitted to use the first seventy-five to one hundred feet of the lane from 1974 to 2012, which negated their claim of a prescriptive easement; (3) Mr. Geertsema's sketch plat is so ambiguous that it does not prove by a preponderance of the evidence the location of the boundary line; (4) the Ebert plat does not sufficiently identify any monumentation to prove the location of the boundary line between the Richards' and petitioners' properties; and (5) the circuit court permitted hearsay testimony from Patricia Sharff Block, who testified that her parents used the lane during World War II to access a house that is now where the Hegyi Trust cabin is located.

With respect to review of claims of insufficient evidence, this Court has held as follows:

> In determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence, must be assumed as true.

Syl. Pt. 3, *Walker v. Monongahela Power Co.*, 147 W.Va. 825, 131 S.E.2d 736 (1963). Additionally, we have held that

> [t]he standard of review recited in Syllabus Point 1 in *Mildred L.M. v. John O.F.,* 192 W.Va. 345, 452 S.E.2d 436 (1994) and in Syllabus Point 1 in *Barefoot v. Sundale Nursing Home,* 193 W.Va. 475, 457 S.E.2d 152 (1995), and their progeny, is clarified to read as follows: In reviewing a trial court's denial of a motion for judgment notwithstanding the verdict, it is not the task of the appellate court reviewing facts to determine how it would have ruled on the evidence presented. Its task is to determine whether the evidence was such that a reasonable trier of fact might have reached the decision below. Thus, in ruling on a denial of a motion for judgment notwithstanding the verdict, the evidence must be viewed in the light most favorable to the nonmoving party. If on review, the evidence is shown to be legally insufficient to sustain the verdict, it is the obligation of the appellate court to reverse the circuit court and to order judgment for the appellant.

Syl. Pt. 1, *Alkire v. First Nat. Bank of Parsons*, 197 W.Va. 122, 475 S.E.2d 122 (1996). Upon our review of the record, and with the above standards in mind, we find that the evidence was sufficient to support the verdict in this matter.

We address each front upon which petitioners challenge the sufficiency of the evidence. First, the jury expressly determined the boundary between the Hegyi Trust property and petitioners' property to be "as shown on Plaintiff's Exhibit 18," which was the Geertsema 1997 plat that was originally prepared for petitioners. Additionally, petitioners' claim that boundary determination by calls and distances must always yield to a determination by using artificial monuments is not supported by the law. Finally, as the circuit court noted in denying petitioners'

post-trial motion, the jury may well have established the boundary, in part, from the testimony of petitioners' expert, Ed Johnson, who admitted that it was necessary for him to ignore an established artificial monument to justify his conclusions.

Second, the son of petitioners' predecessor in title, James E. Hutzler, Jr., testified in support of the Hegyi Trust's prescriptive easement claim over the entire course of the Old Post Road, including the first seventy-five to one hundred feet. There was evidence of communications between Herman Hegyi and Mr. Hutzler's father that evidenced Mr. Hegyi's interest in keeping vandals from using the lane, that suggested the use of a chain to control access, and that indicated that he would buy a padlock and give Mr. Hutzler a key. Petitioners pointed to these communications as Mr. Hutzler giving the Hegyi Trust permission to use the lane; however, the jury was within its rights to reject that argument based on the Hegyi Trust's argument that Herman Hegyi was not seeking Mr. Hutzler's permission to use the lane, but rather, was confirming his right to use the lane. With respect to prescriptive easements, this Court has held as follows:

> In the context of prescriptive easements, the term "adverse use" does not imply that the person claiming a prescriptive easement has animosity, personal hostility, or ill will toward the landowner; the uncommunicated mental state of the person is irrelevant. Instead, adverse use is measured by the observable actions and statements of the person claiming a prescriptive easement and the owner of the land.

> For an adverse use to be "continuous," the person claiming a prescriptive easement must show that there was no abandonment of the adverse use during the ten-year prescriptive period, or recognition by the person that he or she was using the land with the owner's permission. Additionally, the adverse use need not have been regular, constant or daily to be "continuous," but it must have been more than occasional or sporadic. All that is necessary is that the person prove that the land was used as often as required by the nature of the easement sought, and with enough regularity to give the owner notice that the person was a wrongdoer asserting an easement.

> The "open and notorious" or "actually known" requirement is designed to give the owner of the land ample opportunity to protect against another person's actions to establish a prescriptive easement. To establish that an adverse use was "open and notorious," the person claiming a prescriptive easement must show that the wrongful use was visible and apparent, was not made stealthily or in secret, and was so conspicuous and obvious that a reasonable, prudent owner of land would have noticed. However, where the owner of the land had actual knowledge of the adverse use, the person claiming a prescriptive easement need not show that the use was open and notorious.

Syl. Pts. 4, 8, and 10, *O'Dell v. Stegall*, 226 W.Va. 590, 703 S.E.2d 561 (2010). The evidence was more than sufficient to support the jury's conclusion that the Hegyi Trust was entitled to a prescriptive easement.

7

In their third and fourth challenges to the verdict, petitioners claim that the respective plats by Mr. Geertsema and Mr. Ebert were insufficient to show the boundaries between petitioners and the Hegyi Trust and between petitioners and the Richards. With respect to Mr. Geertsema's plat, petitioners' disagreement with his determination does not render it insufficient, especially in light of weaknesses in the testimony of their own expert noted above. As for the Richards, the circuit court correctly ruled that petitioners offered no expert testimony upon which the court could determine that the Ebert plat failed as a matter of law.

Finally, petitioners challenge the admission of the testimony of Ms. Block regarding statements made by her parents that they used the Old Post Road for decades to access what is now the Hegyi Trust property. Contrary to petitioners' argument, Ms. Block did not solely testify to what her parents told her; she also testified based on her own observations when she visited the property and when she viewed photographs of her parents on the property. *See* Syl. Pt. 4, *State v. Phillips*, 194 W.Va. 569, 461 S.E.2d 75 (1995) (*overruled on other grounds by State v. Sutherland*, 231 W.Va. 410, 745 S.E.2d 448 (2013)) ("It is within a trial court's discretion to admit an out-of-court statement under Rule 803(1), the present sense impression exception, of the West Virginia Rules of Evidence if: (1) The statement was made at the time or shortly after an event; (2) the statement describes the event; and (3) the event giving rise to the statement was within a declarant's personal knowledge."). We find no error by the circuit in allowing Ms. Block to testify in this regard.

Petitioners' third assignment of error is that the circuit court erred in prohibiting petitioners' expert witness, Kevin Black, Esquire, a real estate attorney from Woodstock, Virginia, from testifying that there was access to the Hegyi Trust property via an alternate route, from Green Springs Road, in Virginia. Petitioners do not dispute that this alternate access to the Hegyi Trust property was eliminated by the Virginia Department of Transportation in the late 1970s or early 1980s. Petitioners contend that Mr. Black's testimony would have refuted the assertion that there was no other access to the Hegyi Trust property other than through petitioners' property.

"The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syl. Pt. 10, *State v. Huffman*, 141 W.Va. 55, 87 S.E.2d 541 (1955) (*overruled on other grounds by State ex rel. R.L. v. Bedell*, 192 W.Va. 435, 452 S.E.2d 893 (1994)). Petitioners offered the testimony of Mr. Black on the issue of the Hegyi Trust's claim that it had an easement by way of necessity. We reject petitioners' argument because, as the circuit court noted, the Hegyi Trust abandoned its way of necessity claim in advance of trial. Although there was substantial testimony to the effect that the Hegyi Trust would be landlocked without use of the Old Post Road, the Hegyi Trust proceeded to trial solely on its claim that it was entitled to a prescriptive easement. Under *O'Dell,* alternate access was irrelevant to this claim. Accordingly, it was not an abuse of discretion to prohibit Mr. Black's testimony.

In their fourth assignment of error, petitioners argue that the circuit court erred by allowing one of the Hegyi Trust beneficiaries, Karen Hegyi, to testify about petitioners' conduct in violation of an agreed order between the parties. Following a hearing in November 2012, on the Hegyi Trust's motion for a preliminary injunction to allow the beneficiaries to use the

8

Old Post Road, the parties entered an agreed order, one term of which was that the temporary permission would not be admissible at trial. The relevant paragraph of the agreed order reads as follows:

> 13.    The fact that the Defendants Lowe have agreed to this Order and have granted Plaintiff access to Plaintiff's property across the alleged way and the fact that the parties and persons referenced herein may access Plaintiff's property or have accessed Plaintiff's property through the alleged way as part of the agreement made in this Order shall be inadmissible at trial in this matter for any purpose.

Petitioners contend that, despite this agreement, the circuit court permitted Karen Hegyi to testify that when she visited the property in 2012, petitioners tracked her wearing camouflage, video-recorded her visit, and followed her on four-wheelers.[8] Petitioners argue that the agreed order prevented this testimony and the circuit court should have prevented the jury from hearing it.

Upon our review of the language of the agreed order and Ms. Hegyi's testimony, we find no abuse of discretion by the circuit court in allowing her to testify about her encounter with petitioners during the preliminary injunction period. *See Huffman, supra.* Plainly stated, the agreed order prevented the fact that the preliminary injunction had been granted from being admitted into evidence; in this regard, the testimony complied with the order as it made no mention of the preliminary injunction. As the Hegyi Trust correctly argues, the agreed order was not a license for petitioners to harass the Trust beneficiaries for exercising their right to visit the property during the preliminary injunction period. We find no error and reject petitioners' fourth assignment of error.

Fifth, petitioners argue that, given the circuit court's ruling that the Hegyi Trust beneficiaries were not indispensable parties, the court abused its discretion by allowing two of them to remain in the courtroom following their testimony. Rule 615(d) of the West Virginia Rules of Evidence provides that a circuit court may permit witnesses not to be excluded if they are "a person[s] the court believes should be permitted to be present." Petitioners argue that the circuit court's ruling on their motion to dismiss is inconsistent with its ruling deeming the beneficiaries "essential" the case and permitting them to assist counsel during the trial.

We find petitioners' argument to be meritless. Most importantly, the record reflects that the two beneficiaries in question, Karen Hegyi and Bruce Hegyi, were sequestered from the courtroom prior to their testimony. We have held that "[t]he purpose of the sequestration rule is to prevent the shaping of testimony by one witness to match that of another and to discourage fabrication and collusion." *State v. Omechinski,* 196 W.Va. 41, 45, 468 S.E.2d 173, 177 (1996). In the present case, there was no chance that either of the beneficiaries' testimony was shaped by other persons' testimony as they were not in the courtroom to hear it. Additionally, Rule 615(d)

---

[8] Petitioners note that the Hegyi Trust amended its complaint to allege the tort of outrage based on Ms. Hegyi's encounter with petitioners, but the circuit court dismissed the claim.

allows the circuit court discretion in determining who may remain in the courtroom; it does not limit those persons to indispensable parties, as petitioners' argument implies.

Petitioners' sixth assignment of error is similar to their second in that they complain that The Hegyi Trust's expert, Galtjo Geertsema, should not have been permitted to testify as an expert because he was not, and has never been, a licensed surveyor in the Commonwealth of Virginia; he gave legal opinions as the Hegyi Trust's rights of way; and his surveying methods were generally unreliable.

Upon our review, we find no error in the admission of Mr. Geertsema's expert testimony. Rule 702(a) of the West Virginia Rules of Evidence provides that, [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." First, the record reflects that Mr. Geertsema has been serving as an expert witness for more than four decades. Additionally, he testified that he specializes in surveying mountainous and wooded areas, and had conducted over one-thousand surveys in his career, including up to two-hundred surveys in the general area involved in the present case. As to Mr. Geertsema's methodology for conducting surveys, he testified that he relies upon historical documents, records, maps, as well as the use of calls and distances. Petitioners argue that his failure to use GPS renders his opinions unreliable. However, as the circuit court ruled, nothing in the standards governing land surveying requires the use of GPS. Petitioners fail to convince this Court that the circuit court should have prevented Mr. Geertsema from testifying as an expert in this case.

In their final assignment of error, petitioners argue that the court circuit court erred by refusing several of their proposed jury instructions, which addressed the following issues: that the Hegyi Trust had a way of necessity to its property through Virginia; that easements by implication are not favored under the law; that trust beneficiaries are separate from the trust itself; that a change in the location of right-of-way may occur; and that one may not impeach his own deed, i.e., estoppel by deed. With respect to our review of jury instructions, we have held as follows:

> The formulation of jury instructions is within the broad discretion of a circuit court, and a circuit court's giving of an instruction is reviewed under an abuse of discretion standard. A verdict should not be disturbed based on the formulation of the language of the jury instructions so long as the instructions given as a whole are accurate and fair to both parties.

Syl. Pt. 6, *Tennant v. Marion Health Care Found., Inc.,* 194 W.Va. 97, 459 S.E.2d 374 (1995).

We address each alleged instructional error individually. First, we find that the circuit court properly refused to instruct the jury on an alleged way of necessity through Virginia. As we have already discussed, the Hegyi Trust did not pursue a claim for an easement by necessity; it proceeded solely on the claim of a prescriptive easement. Therefore, whether there was an alternate access to the Hegyi Trust property was irrelevant, and it was not error for the circuit court to refuse such an instruction. *See Blair v. Preece,* 180 W.Va. 501, 505 377 S.E.2d 493, 497

(1989) ("The refusal to give an irrelevant instruction is not error."). For much the same reason, we reject petitioners' contention that the circuit court should have instructed the jury that easements by implication, including those of implication by necessity and prior use, are not favored under the law. Petitioners' only proposed instruction to include such language does not reference a prescriptive easement case. As such, the instruction was not relevant to the resolution of the present case.

Third, the only plaintiff in this case was the Hegyi Trust; the individual beneficiaries did not seek individual relief or money damages. Accordingly, the circuit court did not error by refusing to instruct the jury as to the legal separation between a trust and its beneficiaries for the purposes of an award of damages. In any event, the fact that the jury did not award damages to any parties renders the proposed instruction irrelevant.

Fourth, petitioners sought for the circuit court to instruct the jury about the alleged change in Green Springs Road, the alleged alternate access to the Hegyi Trust property through Virginia, when the Virginia Department of Highways removed the access in the late 1970s or early 1980s. We find that this argument has no merit because, as we have repeatedly held herein, whether there was alternate access to the Hegyi Trust property was irrelevant to the Hegyi Trust's claim.

Finally, we find no error in the circuit court's refusal to give petitioners' proposed estoppel by deed instruction. As the Hegyi Trust correctly argues, adverse possession would provide an exception any estoppel by deed argument, and that is precisely what the jury determined in this case when it found that the Hegyi Trust was entitled to a prescriptive easement. In conclusion, we find no error by the circuit court in its refusal to instruct the jury on the above-referenced issues.

For the foregoing reasons, we affirm the Circuit Court of Berkeley County's "Order Denying Defendants Lowe's Motion to Arrest Judgment, Set Aside the Verdict and Award Defendants Lowe a New Trial," entered on July 16, 2015.

Affirmed.

**ISSUED:** October 7, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

11